St. Louis Southwestern Railway Company of Texas v. Mrs. Hannah Pruitt.

Application No. 4172. Decided April 14, 1904.

**1.—Carrier of Passengers—Misdirection—Duty to Remedy.**

Refusing a writ of error on the ground that the ruling here criticised was not necessary to the decision, approval is withheld from the opinion on appeal that it was the duty of a carrier whose conductor had directed to its train a passenger having a ticket over another line to comply with her request, when the mistake was discovered, to transport her to a station where she had relatives. (Pp. 489, 490.)

**2.—Same—Charge.**

Charge held not to place upon a railway the duty to carry a misdirected passenger taking the wrong train to a place where she had relatives, instead of putting her off at the first station. (Pp. 489, 490.)

Application for writ of error to the Court of Civil Appeals for the Fifth District, in an appeal from Morris County.

*Glass, Estes & King,* for applicant.

GAINES, CHIEF JUSTICE.—We are of opinion that the application for the writ of error in this case ought to be refused; but are not prepared to approve a proposition of law announced by the Court of Civil Appeals in their opinion.

The petition for the writ of error states the substance of the plaintiff's petition as follows: "The plaintiff's petition alleged substantially that plaintiff purchased a ticket in Little Rock, Ark., to Daingerfield, Texas, over the Iron Mountain Railroad to Texarkana, and over the Texas & Pacific Railroad to Jefferson, Texas, and the Missouri Kansas & Texas Railroad to Daingerfield; that plaintiff was at said time a widow lady, 63 years old, and unaccustomed to travel, and that when she arrived at Texarkana she was compelled to change cars from the Iron Mountain road; that she had no knowledge or familiarity with the schedules of the different trains and did not know, except from inquiry, what train she should have taken passage on to get to her destination; that shortly after her arrival at Texarkana she approached the conductor of one of defendant's passenger trains, and informed him that she wanted to go to Daingerfield, and had a ticket to that place by way of Jefferson, and asked the conductor if his train was the proper one for her to board; that the conductor replied, 'Yes, madam, get on,' and assisted her to board the train; that after the train had departed from Texarkana he came through the car, and after examining plaintiff's ticket, informed her that she was on the wrong train, and that she would have to get off at the next station; that she then asked the conductor to carry her to Pittsburg, where she had relatives, and where she could get on board the Missouri, Kansas & Texas train to Daingerfield, and told him she had no money with which to pay her fare; that plaintiff had relatives in Pittsburg by whose assistance she could have reached Daingerfield as quickly as she would have reached it had she gone over the Texas & Pacific road to Jefferson, and that the conductor abruptly and gruffly, in the presence of all the passengers, told plaintiff that she would have to get off at the next station, and when the next station was reached, required her to get off and wait for the next train going east, to Texarkana; that plaintiff was a stranger in Red Water,— it being the station where plaintiff had to get off and wait,—and while at said station she had to wait in and around the station of said place from her arrival, about noon, until 12 o'clock that night; that the weather was cold and damp, and that the waiting-room was cold and poorly heated and occupied by negroes and ruffians, who swore and cursed in her presence, which mortified and humiliated her; that she was carried back to Texarkana about 11 o'clock that night, and had to wait in the depot that night until about 8 o'clock the following morning; and

that while there she had nothing to eat and no place to sleep, and as a consequence was made sick, and endured much suffering and anguish.

"The negligence alleged was that of the conductor in inducing the plaintiff to board the train en route to Red Water, and in failing and refusing to carry her from Texarkana to Pittsburg after the mistake had been discovered."

The jury returned a verdict in the plaintiff's favor for $300; thus finding, in effect, that the facts stated in the petition were proved.

The petition for the writ of error assigns error upon the charge of the court and sets out the part complained of as follows: "The trial court, in the first paragraph of his charge, instructed the jury that if Mrs. Pruitt asked the conductor if his train was the right one for her to board in order to reach Daingerfield, via Jefferson, and that the conductor replied that it was, and that when she presented her ticket to him, after she was on the train, he informed her that she was on the wrong train and would have to get off at Red Water, and that if she then told him that she had friends and relatives in Pittsburg who would take her to her home in the country, and that she had no money with which to pay her fare to Pittsburg, and requested him to take her to Pittsburg, and that the conductor refused to do so, but directed and required her to get off at Red Water; and if in fact she did have relatives at Pittsburg, and if after their arrival there they would have taken her to her home, and that she had no money with which to pay her fare to Pittsburg, and requested the conductor to take her there, and he refused to do so, and put her off at Red Water, and that the depot and waiting-room at Red Water was poorly heated, and that a person of ordinary care and prudence, situated and circumstanced as Mrs. Pruitt was, would have remained in said house and room, and that while there she suffered from hunger and cold as alleged in her petition, and that by reason of the conductor telling her to board the train at Texarkana she was delayed in reaching her destination, and otherwise suffered and was made sick, and sustained damages as alleged in her petition, and that the act of the conductor in telling her to board the train at Texarkana was negligence, and but for which would not have been delayed in reaching her destination, and would not have suffered, to find for the plaintiff," etc. This is assigned as error "because said charge makes it negligence for the conductor to refuse to carry the plaintiff on to Pittsburg," etc. The Court of Civil Appeals disposed of the assignment by holding that it was the duty of the company to have carried the plaintiff to Pittsburg upon her request to do so. We do not concur in the proposition urged in support of the assignment, nor are we disposed to concur in the reason given by the Court of Civil Appeals for sustaining the instruction. It is true that the court instructed the jury in effect, among other things, that in order for the plaintiff to recover, they must find that she told the conductor that she had relatives and friends at Pittsburg who would aid her to complete her journey, and they must also find that in fact she did have such relatives and friends

at that place. But nowhere were the jury instructed that it was the duty of the defendant to carry her to that point. Nor do we think that such a proposition is a necessary or reasonable deduction from the language employed. The effect of the instruction in this particular was merely to impose upon the plaintiff, as a condition to her recovery, the burden of proving certain facts which it was not necessary for her to establish. Neither do we see that the plaintiff could have been in any manner prejudiced by the part of the charge under consideration. She sought damages for the delay in her journey and for the discomforts suffered by her in consequence of having to remain at Red Water and at Texarkana. These were precisely the same whether it was the duty of the company to carry her to Pittsburg or to return her to Texarkana. In our opinion the question of the duty of the defendant with reference to that matter was not in the case and we express no opinion upon it. But we are unwilling to permit the proposition to go out with the semblance of our approval, which would be the case were we to refuse the writ of error without explaining our reason for that ruling.

The writ of error is refused.

*Writ refused.*